Pfeifer, J.,
dissenting.
{¶ 40} Early in law school, every student is introduced to the rich historical tradition and critical importance of the common law in our nation’s development. Today, American judges and attorneys are invited to assist both developed and developing countries in applying our common-law traditions, which date back centuries in England, to their efforts in empowering their courts to protect basic and constitutional human rights without interference from political leaders and legislative bodies or their military establishment. The power of every citizen in the United States to seek redress in our open courts for injury done, be it by our government, another citizen, or a large corporation, is a source of some amazement and great envy in many parts of the world. That the resulting decisions by judges and juries are respected and enforced without police or military intervention is incomprehensible in some quarters. Protecting our citizens’ individual fundamental constitutional rights from attack by the government is the proud duty of the American judiciary and a part of our oath.
{¶ 41} The case of Ruther v. Kaiser, rolled out amidst a blizzard of announcements by this court, will be of little immediate notice, except to the parties, the medical community, and a small, specialized element of the bar. Over time, however, Ruther will come to be known for the profound damage done to every Ohio citizen’s constitutional right to remedy in open court for an injury done him in his land, goods, person, or reputation. Ohio Constitution, Article I, Section 16.
*420 {¶ 42} The sweeping language employed by the majority in this case is the crescendo in our court’s decade-long deference to, and acceptance of, the General Assembly’s assault on our citizens’ right to remedy set forth, without alteration, for over two centuries in the Ohio Constitution.
{¶ 43} When is a fundamental right, contained in the Ohio Constitution and Bill of Rights since 1802, no longer the individual right of an Ohio citizen? According to this court, whenever the Ohio General Assembly chooses to extinguish the right, it will no longer exist, period. The majority writes:
A plain reading of Article I Section 16 reveals that it does not provide for remedies without limitation or for any perceived injury. Rather, the right-to-remedy clause provides that the court shall be open for those to seek remedy “by due course of law.” (Emphasis added.) Article I, Section 16 does not prevent the General Assembly from defining a cause of action.
Majority opinion, ¶ 12. In case the reader did not understand the breadth of the majority’s devastating proclamation, it continues: “Thus, the General Assembly has the right to determine what causes of action the law will recognize and to alter the common law by abolishing the action, by defining the action, or by placing a time limit after which an injury is no longer a legal injury.” Majority opinion, ¶ 14.
{¶ 44} Under Ruther, we now fully abdicate our solemn duty to enforce and protect constitutional rights afforded citizens since the beginning of statehood. If the General Assembly abolishes a remedy, including those recognized at common law when the constitution was written, it is now clearly within its power. We will afford “great deference” in presuming constitutionality of any act of the General Assembly limiting or abolishing a cause of action.
{¶ 45} Continued erosion of the venerable right of every citizen to a remedy in open court for injury done will inevitably flow from the General Assembly. It may come in small drips or in tidal waves, but it will come. The economic interests pushing limitations on causes of action are just too powerful and too seductive for the General Assembly to resist. We have now removed the Assembly’s only dam against the onslaught: this court’s previous vigorous enforcement of the “right to remedy” constitutional protections.
{¶ 46} When Timothy and Tracy Ruther sought a remedy in open court for injuries suffered because of a doctor’s failure. to properly respond to three elevated liver-enzyme tests taken more than a decade before Timothy developed a fatal liver lesion and hepatitis C, they could never have envisioned the damage their ease would ultimately cause for generations of Ohioans yet to be injured. *421 Their personal tragedy has evolved into a undiscovered nightmare for legions of Ohioans who will find the courthouse doors barred for the presentation of their future legitimate injury claims.
Santen & Hughes, John Holschuh, Brian O’Connor, and Sarah Tankersley, for appellee.
Arnold Todaro & Welch Co., L.P.A., John Welch, and Karen Clouse, for appellants.
Bricker & Eckler L.L.P., Anne Marie Sferra, and Bridget Purdue Riddell, urging reversal for amici curiae American Hospital Association, American Medical Association, American Osteopathic Association, Ohio Alliance for Civil Justice, Ohio Hospital Association, Ohio Osteopathic Association, and Ohio State Medical Association.
Tucker Ellis and Susan Audey, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.
Michael DeWine, Attorney General, Alexandra Schimmer, Solicitor General, and Michael Hendershot, Chief Deputy Solicitor, urging reversal for amicus curiae state of Ohio.
Paul W. Flowers Co., L.P.A., and Paul Flowers, urging affirmance for amicus curiae Ohio Association for Justice.
{¶ 47} I dissent.